**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**JEFFREY SCHALAU,**

        **Plaintiff,**            **CIVIL ACTION NO. 12-14998**

        **vs.**                    **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 9) be **DENIED**, Defendant's motion for summary judgment (docket no. 12) be **GRANTED**, and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL BACKGROUND**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on November 5, 2007, alleging disability beginning September 2, 2001 due to lumbar disc disease, nerve damage in his legs, partial blindness in his left eye, obsessive compulsive disorder, chronic calcium buildup, anxiety, and depression.  (TR 30, 183, 187).  The applications were denied and Plaintiff filed a written request for a *de novo* hearing.  On May 25, 2010 Plaintiff appeared with counsel in Flint, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Denise McDuffie Martin, who presided over the hearing from Orland Park, Illinois.  (TR 47-70).  Vocational Expert (VE) Judith Findora also appeared and testified at the hearing, as did Larry Kravitz, Ph.D., an impartial medical expert.  At the hearing, the

1

ALJ noted that Plaintiff had a prior binding ALJ denial on the issue of disability through April 7, 2005. (TR 30, 82-89). Consequently, the ALJ limited her review to the issue of whether Plaintiff has been disabled at any time from April 8, 2005 through September 30, 2005, the date last insured, or through September 10, 2010, the date of the ALJ's decision. (TR 31).

After the hearing, the ALJ asked an impartial medical expert in internal medicine to review medical records and respond to interrogatories. (TR 30, 596-607). The ALJ notified Plaintiff and Plaintiff's counsel of the new evidence and of Plaintiff's rights with respect to the evidence and received no response. In a September 10, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing jobs that exist in significant numbers in the national economy. (TR 30-41). The Appeals Council declined to review the ALJ's decision and Plaintiff filed the instant action for judicial review.

## III.     PLAINTIFF'S TESTIMONY, MEDICAL EXPERT TESTIMONY, AND MEDICAL EVIDENCE

### A.     Plaintiff's Testimony

Plaintiff was just shy of thirty-three years old on his alleged disability onset date. He reported that he is a certified printing press operator and he is six credits short of his associate's degree in automotive technology. (TR 52). He lives in a mobile home with his wife and three children and he attends church two days per week. (TR 52).

Plaintiff testified that his physical condition deteriorated after the prior ALJ's denial. He claimed that more discs have deteriorated since that time and he has no vision in the central portion of his left eye. (TR 61). Plaintiff testified that he has back pain radiating into his fingers and toes, he has lost the nerve reflex in his left ankle, he has constant burning and numbness in his outer thighs between his knees and hip, he has constant pain in his right hip, and he can only lay on his

left side during the day when he rests. (TR 54). Plaintiff testified that he has sleep apnea and difficulty sleeping at night. He claimed that he took two naps a day during the relevant time period lasting two to three hours each. (TR 55). He also claimed that he suffered from depression in 2005 that caused him to be angry, irritable, and forgetful. He reported that he suffered from medication induced drowsiness. (TR 57-59). He testified that he takes Celexa for his OCD and depression, Darvocet for pain, and Vicodin for severe pain. (TR 61). Plaintiff stated that his OCD causes his mind to wander and brings about forgetfulness. (TR 62).

Plaintiff estimated that he could sit for fifteen minutes at a time in 2005 before needing to stand, he could stand without moving for approximately ten to fifteen minutes before he needed to walk in order to relieve the intense burning in his thighs, and he could walk approximately fifteen to twenty minutes. (TR 56). He stated that in 2005 he could lift a gallon of milk using both hands. He reported that he had back surgery in 1998 that relieved his pain for two years, after which his pain returned. Plaintiff stated that he enjoys fishing with his children and he last went fishing in 2006. (TR 62).

**B.      Testimony of the Medical Expert**

Larry Kravitz, Ph.D., an impartial medical expert, appeared and testified at the hearing. Dr. Kravitz testified that Plaintiff has been diagnosed with an adjustment disorder, a personality disorder, and an obsessive compulsive mood disorder. (TR 64). The doctor testified that Plaintiff's conditions do not meet or equal a listed impairment. He opined that Plaintiff was mildly impaired in his activities of daily living, and moderately impaired in both social functioning and concentration, persistence, or pace. He reported that Plaintiff has had no episodes of decompensation. He claimed that there was very little treatment evidence in the record to support

3

more restrictive mental limitations. The doctor noted that Plaintiff was somewhat irritable and he loses his temper, but he opined that Plaintiff's memory, thought processes, and concentration were intact. He found that Plaintiff's primary limiting factor was his serious pain disorder. He questioned whether Plaintiff had a true obsessive compulsive disorder, and he testified that Plaintiff's symptoms were more a function of chronic ruminating and a high degree of anxiety. The doctor opined that Plaintiff would be limited to being able to carry out and understand simple instructions with only superficial work place contacts and ordinary levels of stress. (TR 65).

**C.      Medical Evidence**

The parties did not set forth separate accounts of the medical record. The Court, therefore, having reviewed the record in full, adopts the summary of the medical evidence as set forth in the ALJ's opinion and will make references and citations to the medical evidence as necessary in response to the parties' arguments.

**IV.     VOCATIONAL EXPERT TESTIMONY**

The Vocational Expert (VE) testified that Plaintiff worked in the past as an auto parts sales manager at a skilled, medium exertional level, and as a park aid at a semiskilled, light exertional level. (TR 66). The ALJ asked the VE to consider an individual with the same age, education, and work experience as Plaintiff, who was limited to light work with the option to alternate between sitting and standing every sixty minutes, with no climbing of ladders, ropes or scaffolds, only occasional climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching and crawling. The ALJ stated that the hypothetical individual should avoid unprotected heights, dangerous moving machinery and vibration, and he is limited to unskilled, simple, routine repetitive

work with minimal superficial interaction with supervisors, coworkers, and the public and an ordinary stress level. (TR 66-67).

The VE testified that an individual with these limitations could not perform Plaintiff's past work but could work in administrative support positions, in bench assembly positions, as an inspector, and as a machine operator, comprising 15,100 jobs in the lower peninsula of Michigan. The VE testified that if the individual was limited to sedentary work as opposed to light work he would be able to perform administrative support positions, assembly positions, machine tender positions, stock handling and packaging positions numbering approximately 8,800 jobs in the lower peninsula of Michigan. If the individual required a job with frequent but not repetitive handling and fingering, the number of jobs in the lower peninsula of Michigan would be reduced to 5,600 sedentary jobs and 12,600 light jobs. The VE testified that work would be precluded if the individual needed to nap at unpredictable times more than once or twice a day for just a few minutes, or if the individual would be off task twenty percent of the time due to pain, depression or medication.

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2005 with respect to his claims for a period of disability and disability insurance benefits. The ALJ further found that although Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 2, 2001, and suffered from the severe impairments of depression, obsessive compulsive disorder, personality disorder, obesity, decreased visual acuity in the left eye, and bilateral carpal tunnel syndrome, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 30-33). The ALJ determined that Plaintiff

retained the residual functional capacity (RFC) to perform unskilled light work involving only simple, repetitive and routine tasks with the following limitations: (a) no climbing of ladders, ropes or scaffolds; (b) no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling; (c) no more than frequent fingering and handling of objects; (d) no work requiring fine visual acuity; (e) no work involving vibration; (f) no work at heights or around moving machinery; (g) only minimal, brief and superficial interaction with the general public, supervisors, and coworkers; and (h) ordinary stress levels. (TR 33-39). The ALJ concluded that Plaintiff was unable to perform past relevant work but he could perform jobs that exist in significant numbers in the national economy. (TR 39-41). Consequently the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from April 8, 2005, the alleged onset of disability, through the date last insured or through the date of the ALJ's decision.

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

7

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff argues that the ALJ erred in his step two analysis, erred in assessing his credibility, failed to properly evaluate medical opinions, and formulated an inaccurate hypothetical question that did not accurately portray Plaintiff's impairments.

*1.     Severe Impairments Under Step Two*

Plaintiff first argues that the ALJ erred by failing to find that Plaintiff's back issues and degenerative disc disease were severe impairments. (Docket no. 9 at 18). In response, Defendant states that it appears that the ALJ considered Plaintiff's lower back condition as a severe impairment but inadvertently omitted it from the list of severe impairments. Defendant contends that this is harmless error because the ALJ considered Plaintiff's lower back condition in evaluating Plaintiff's RFC.

An ALJ determines the severity of a claimant's medically determinable impairments at step two of the five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The severity analysis is simply a threshold determination. "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not listed as severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims, which it accomplishes by testing whether the claimant has any severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. *See Maziarz v. Sec'y of Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987).

A severe impairment or combination of impairments is one which significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).

The ALJ found at step two of the five-step sequential analysis that Plaintiff's depression, obsessive compulsive disorder, personality disorder, obesity, diminished visual acuity in the left eye, and bilateral carpal tunnel syndrome constituted severe impairments. (TR 33). The ALJ then proceeded to the remaining steps of the sequential analysis where she considered Plaintiff's testimony and other evidence of record pertaining to Plaintiff's back condition. The ALJ discussed the fact that Plaintiff alleged disability due to lumbar disc disease and nerve damage in his legs, and

that he reported that he could not bend or move without low back pain. She noted that Plaintiff takes Vicodin for severe pain once every ten days and Darvocet to control ordinary pain levels. She considered medical evidence showing that Plaintiff had a partial laminectomy at L5-S1 in February 1996, a CT of the lumbar spine in November 2001 showing a disc herniation at L4-L5, and an MRI scan of the cervical spine in January 2008 showing minimal spinal canal stenosis and right neural foraminal narrowing. She further discussed the fact that Plaintiff underwent physical therapy and received epidural steroid injections to control his back pain.

The ALJ determined that Plaintiff's allegations of back pain were supported by the medical record. She concluded that Plaintiff's back impairment limits him to light work and precludes him from performing work that involves climbing ladders, ropes or scaffolds, more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling, or working at heights or around moving machinery. (TR 34-35).

Although the ALJ did not identify Plaintiff's back condition as a severe impairment, she clearly considered his back impairment in subsequent steps of the sequential analysis and incorporated limitations pertaining to his back impairment into the RFC. The undersigned suggests that the ALJ's failure to classify Plaintiff's back condition as a severe impairment does not constitute reversible error.

*2.     Credibility Assessment*

Next, Plaintiff argues that the ALJ's reasons for discrediting his testimony are not supported by substantial evidence. He claims that the ALJ's decision finding that his testimony was not credible is clearly in error because his testimony is supported by the medical record. It is well known that "[s]ince the ALJ has the opportunity to observe the demeanor of a witness, his

conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993) (citation omitted). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

S.S.R. 96-7p, 1996 WL 362209, at *34485-86. The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

*Id.* at *34486.

The Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to the available objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4)

the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ reviewed Plaintiff's testimony and other evidence of record and concluded that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments was generally credible but not credible to the extent his statements alleged restrictions greater than what was included in the RFC. (TR 34). The ALJ accepted that Plaintiff had impairments and imposed physical and mental limitations on his ability to work, effectively finding that his statements pertaining to his back pain, radiating nerve pain, loss of vision in his left eye, carpal tunnel syndrome, anger, irritability and anxiety were credible to the extent these conditions imposed work-based restrictions. She did this by precluding Plaintiff from performing work that would require him to climb ladders, ropes or scaffolds, engage in more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling, perform more than frequent fingering and handling of objects, perform work requiring fine visual acuity, or engage in work involving vibration, heights or handling of moving machinery. She also found that his impairments limited him to light work and placed restrictions on his ability to interact with others, finding that he would function best in a work setting with only minimal, brief and superficial interaction with the general public, supervisors and coworkers, an ordinary stress level, and where he would be required to perform only simple, unskilled, repetitive and routine tasks.

Although the ALJ acknowledged that Plaintiff had impairments, she stopped short of finding that his testimony or other evidence of record supported a finding of total disability. The ALJ reviewed Plaintiff's testimony, statements he made in his disability report, and the medical evidence. She discussed radiology examinations and medical evaluations and diagnoses pertaining to his back condition. She observed that Plaintiff underwent a partial laminectomy at L5-S1, showed evidence of left S1 radiculopathy with a small central disc herniation at L4-L5 and a mild disc bulge at L5-S1, and had an antalgic gait and a positive straight leg raising test. (TR 35, 344). She cited evidence that reported that Plaintiff had significant subjective limitations but minimal clinical abnormalities. She noted that the record showed that Plaintiff made good progress with physical therapy and epidural steroid injections, and that he was observed to have a full range of motion of the lumbar spine and normal motor strength. Indeed, the record shows that at the end of Plaintiff's physical therapy sessions he was reporting significantly less pain, no radiating symptoms, significantly greater ease in bending, bathing and dressing, and a generalized return to normal activities without limitations. (TR 364). The ALJ considered the medications Plaintiff was taking. She also considered Plaintiff's obesity, shoulder and elbow issues, carpal tunnel syndrome, vision impairment, obstructive sleep apnea, depression, obsessive compulsive disorder, anger and irritability, and she concluded that to the extent these conditions were limiting they were appropriately accounted for in the RFC.

Plaintiff seems to argue that the ALJ was obligated to find that Plaintiff's testimony was fully credible because it was supported by evidence in the medical record. (Docket no. 9 at 11, 13). While there is evidence in the record to support Plaintiff's testimony, there is also substantial evidence to support the ALJ's finding that Plaintiff was not disabled. It is the undersigned's opinion

13

that the ALJ considered appropriate factors, supported her credibility finding with substantial evidence, and provided a reasonable explanation for why she found that Plaintiff's testimony was generally credible but not sufficiently credible to support a finding of disability. The ALJ's credibility assessment should not be disturbed.

*2.     Evaluation of Medical Opinions and the Hypothetical Question*

Next, Plaintiff argues that the ALJ failed to properly evaluate the medical evidence, which he claims clearly shows that he is disabled. He contends that the ALJ erred in assigning little weight to the treating opinions of Dr. Brengel, while assigning controlling weight to the State disability determination service's consultative evaluation. Plaintiff contends that the ALJ decided on his own to discount and ignore the medical opinions of Dr. Brengel without providing adequate explanation for his conclusions.

In addition, Plaintiff argues that the ALJ failed to account in the hypothetical question for the limitations stated in Dr. Brengel's medical source statement. He further contends that the ALJ erred in not following the hypothetical questions posed by Plaintiff's attorney which elicited VE testimony that work would be precluded if the hypothetical individual had more than one unexcused absence per month, needed to take more than one or two naps a day for more than just a few minutes at a time, or would be off task twenty percent of the day.

It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the

14

weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

The ALJ is required to present a hypothetical question that includes only those limitations she finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The hypothetical must "accurately portray[] [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence. *Varley*, 820 F.2d at 779 (citations omitted).

On February 3, 2003, treating physician Dr. Brengel documented that Plaintiff is totally disabled, he requires daily narcotic medication to control his pain, and he is not able to remain in one position for more than five minutes without experiencing debilitating pain. (TR 388). The ALJ considered this opinion and appropriately found that the doctor's opinion that Plaintiff is disabled is not entitled to any weight because the issue of disability is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(2)(1). The ALJ also observed that a neurological consultation dated just two months prior to Dr. Brengel's opinion was inconsistent with the doctor's assessment. The neurological consultation states that Plaintiff had full range of motion of the lumbar spine, a nontender back, and a negative straight leg raising test. (TR 391-92). In addition, the neurological report states that Plaintiff was participating in water aerobics three times a week for an hour at a time and he was engaging in physical therapy. The neurological report documents that Plaintiff would not benefit from surgery but recommends that he continue aggressive therapy and participate in

aerobic exercise in an effort to burn calories, lose weight, and strengthen his back and stomach muscles. The ALJ concluded that Dr. Brengel's February 3, 2003 opinion was not entitled to controlling or great weight because it was inconsistent with other contemporaneous evidence. The ALJ's assessment is reasonable, clearly explained, and fully supported with citations to evidence in the record.

Next, the ALJ considered a January 2005 opinion of Dr. Brengel which states that Plaintiff is totally disabled by his back pain and he is only able to sit or stand in one place for several minutes at a time before having to move due to pain. (TR 374). The ALJ found that the doctor's opinion was reasonable at the time and consistent with other evidence of record, but she found that the limitations the doctor imposed were of short duration. The ALJ reached this conclusion after considering records which showed that at the conclusion of his physical therapy sessions in March 2005, Plaintiff had significantly less pain, a markedly improved ability to bend, dress and bathe, and a generalized ability to return to normal activities without limitations. In addition, the ALJ concluded that Dr. Brengel's January 2005 limitations were inconsistent with Plaintiff's performance on treadmill tests in March 2005 and October 2007. The October 2007 treadmill test shows that Plaintiff exercised for just over eight minutes before the test was stopped because Plaintiff was fatigued and short of breath. (TR 298). No mention is made in the treadmill test that Plaintiff was unable to perform the test or had to stop the test because of pain. The undersigned concludes that the ALJ appropriately assessed Dr. Brengel's January 2005 opinion and cited specific examples from the record to support her conclusion.

Next, the ALJ considered Dr. Brengel's February 2009 Medical Examination Report and his May 2010 Physical Medical Source Statement. (TR 512-13, 559). In the February 2009 report Dr.

Brengel opined that Plaintiff could only occasionally lift less than ten pounds, stand and/or walk less than two hours in an eight hour workday, could not perform fine manipulation, and could not meet his needs at home. He found that Plaintiff had limitations with comprehension, memory, and sustained concentration. In the May 2010 report, the doctor found that Plaintiff could occasionally and frequently lift and/or carry ten pounds, stand or walk less than two hours in an eight hour day, sit less than six hours in an eight hour day, and he could not bend, lift, or remain stationary more than thirty minutes while sitting or standing. He also found that Plaintiff had trouble concentrating. In a Mental Medical Source Statement dated May 2010, Dr. Brengel opined that Plaintiff was markedly limited in his ability to deal with the public, maintain concentration and attention, withstand the stress and pressures of an eight hour workday, and handle job funds. (TR 557). The doctor further found that Plaintiff was moderately limited in his ability to relate to and interact with supervisors and coworkers and understand, remember and carry out complex job instructions.

The ALJ found that Dr. Brengel exaggerated Plaintiff's limitations in the Medical Examination Report and the Physical Medical Source Statement and assigned little weight to the opinions. For instance, the ALJ questioned Dr. Brengel's limitation on fine finger manipulation when the record suggested that there was no evidence of carpal tunnel syndrome until March 2010. She found that Dr. Brengel's March 2010 report was not consistent with a contemporaneous neurological evaluation showing that Plaintiff's gait was independent and normal, he could walk on heels and toes without difficulty, and he could lift up to fifteen pounds. (TR 550-51). The ALJ also assigned little weight to Dr. Brengel's Mental Medical Source Statement because it was outside the doctor's area of expertise and assessed limits which were not contained in other medical reports.

17

Dr. Brengel did not cite to a single medical record to support the limitations he imposed in his February 2009 and March 2010 reports. Likewise, Plaintiff has failed to identify medical evidence that supports the doctor's limitations. The ALJ was not required to assign controlling weight to Dr. Brendel's opinions if she found that they were not supported by the objective medical evidence or were inconsistent with the other evidence of record. The undersigned finds that the ALJ gave proper consideration to Dr. Brengel's medical opinion evidence.

Next, Plaintiff challenges the ALJ's assignment of weight to the evaluation of the disability determination service's medical consultant. (TR 464-71). The ALJ stated that she found this opinion to be the most informed and consistent with the medical evidence through January 2008. The State medical consultant, Dr. Natalie Gray, completed a Physical Residual Functional Capacity Assessment on January 28, 2008. (TR 462-71). The doctor opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand and/or walk about six hours in an eight hour workday, and sit about six hours in an eight hour workday provided he be permitted to alternate between sitting and standing every hour for one to four minutes to relieve back pain. She also found that Plaintiff had occasional postural limitations with the exception that he should never climb ladders, ropes or scaffolds. She found that Plaintiff should avoid heights, moving machinery and vibrations. In addition, she opined that Dr. Brengel's assessment finding total disability appeared to be based on Plaintiff's history rather than on objective medical findings.

Unlike Dr. Brengel's opinions, the opinion of Dr. Gray is fully supported with citations to the medical record. As indicated above, the ALJ found that Dr. Gray's evaluation was consistent with the medical evidence through January 2008. The ALJ properly assessed Dr. Gray's opinion. Her treatment of the medical opinions of record should not be disturbed.

18

The ALJ crafted an appropriate RFC and posed hypothetical questions to the VE that took into account limitations she found to be credible. The ALJ was not obligated to incorporate Dr. Brengel's limitations into the RFC. Nor was the ALJ obligated to find that Plaintiff was disabled simply because the VE testified that work would be precluded if the hypothetical worker had more than one unexcused absence per month, needed to take more than one or two naps a day for more than just a few minutes at a time, or would be off task twenty percent of the day. The ALJ formulated an RFC that is supported by substantial evidence, posed hypothetical questions that accounted for Plaintiff's credible limitations, and based her step five finding on VE testimony, properly finding that there are jobs that exist in the national economy that Plaintiff can perform. Plaintiff's motion for summary judgment should be denied and Defendant's cross motion granted.

**<u>REVIEW OF REPORT AND RECOMMENDATION</u>**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not

later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: October 30, 2013  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 30, 2013  s/ Lisa C. Bartlett
Case Manager